UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

REBEKKA SUAZO
4342 South Howell Avenue
Milwaukee, Wisconsin 53207

    Plaintiff,

v.

MAHLER ENTERPRISES, INC.
d/b/a MAHLERCLEAN
600 North Broadway, Floor 2
Milwaukee, Wisconsin 53202

    Defendant.

Case No: 18-cv-888

**JURY TRIAL DEMANDED**

---

## COMPLAINT

---

COMES NOW the Plaintiff, Rebekka Suazo, by her counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendant, alleges and shows to the Court as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et. seq.*, ("FMLA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.* ("Title VII").

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant resides and/or operates its business in the Eastern District of Wisconsin and the unlawful employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin.

## PARTIES

3. Plaintiff, Rebekka Suazo, is an adult female resident of the State of Wisconsin with a post office address of 4342 South Howell Avenue, Milwaukee, Wisconsin 53207.

4. Defendant, Mahler Enterprises, Inc., was, at all material times herein, a commercial entity with, according to the Wisconsin Department of Financial Institutions, a principal address of 600 North Broadway, Floor 2, Milwaukee, Wisconsin 53202.

5. Defendant provides commercial and residential cleaning, private staffing, and real estate services.

6. MahlerClean is a division of Defendant.

7. MahlerClean is commonly known as Defendant's "cleaning division."

8. MahlerClean is not a separate legal entity from Defendant.

9. MahlerClean is not a registered entity in the State of Wisconsin.

10. During Plaintiff's employment with Defendant, Defendant was a covered employer for purposes of the FMLA.

11. During Plaintiff's employment with Defendant, Plaintiff did not meet the criteria under 29 C.F.R. § 825.217(a), which defines "key employee" as used in the FMLA.

12. During Plaintiff's employment with Defendant, Defendant employed at least 50 employees within 75 miles of Plaintiff's work site.

13. As of April 2017, Plaintiff had been employed by Defendant for twelve (12) months and had worked at least 1,250 hours during the prior twelve (12) months.

14. During Plaintiff's employment with Defendant, Plaintiff did not exceed the amount of FMLA leave for any FMLA leave entitlement period.

15. Plaintiff exhausted all administrative remedies and satisfied all conditions precedent prior to bringing this action.

## GENERAL ALLEGATIONS

16. In approximately September 2003, Defendant hired Plaintiff as a Cleaning Representative.

17. Subsequent to Defendant's hire of Plaintiff in approximately September 2003, Defendant promoted Plaintiff to the position of Cleaning Manager.

18. During Plaintiff's employment with Defendant and during the years 2016 and 2017, Plaintiff primarily performed her job duties and job responsibilities on behalf of Defendant at the Milwaukee Art Museum.

19. In approximately the year 2016, Plaintiff became pregnant.

20. In approximately late 2016 and/or early 2017, Plaintiff began communicating with Defendant regarding her pregnancy and desire to take leave from Defendant subsequent to the birth of her child.

21. In approximately February 2017 and/or March 2017, Defendant received medical documentation on behalf of Plaintiff regarding her pregnancy and/or desire to take leave from Defendant subsequent to the birth of her child.

22. In approximately March 2017 and/or April 2017, Defendant received Plaintiff's completed documentation requesting the use of FMLA leave for the birth of her child.

23. On or about April 14, 2017, Julie K., Defendant's Human Resources Representative, spoke to Plaintiff via telephone (hereinafter simply the "April 14, 2017 conversation").

24. During the April 14, 2017 conversation, Julie K. informed Plaintiff that Defendant had approved her request for FMLA leave for the birth of her child.

25. During the April 14, 2017 conversation, Julie K. told Plaintiff, "Yes, we got your FMLA paperwork," "Yes, you're approved for FMLA," and, "You're all set," or words to that effect.

26. During the April 14, 2017 conversation, Julie K. told Plaintiff, "Just give us a call when you're ready to come back," or words to that effect.

27. On or about April 17, 2017, Plaintiff gave birth.

28. On or about May 1, 2017, Defendant sold its cleaning division.

29. On or about May 1, 2017, Defendant terminated Plaintiff's employment.

30. On or about May 27, 2017, Plaintiff received a letter, dated May 26, 2017, from Mark de Beer, Defendant's Chief Financial Officer, stating in full:

> Effective May 1, 2017 Mahler Enterprises, Inc. sold substantially all of the assets in MahlerClean to Pat Sullivan and Adam Brauhn. In connection with the transaction, all employees of the cleaning division were terminated from Mahler Enterprises, Inc. As a result of this sale, your employment with Mahler Enterprises, Inc. also ended effective as of May 1, 2017, at which time you were on an approved leave of absence. Our delay in providing you this letter was the result of an administrative oversight. We apologize for not providing you this notice before today. Please let me know if you have any questions.

31. Plaintiff was unaware that her employment with Defendant was terminated until her receipt of Defendant's May 26, 2017 letter on or about May 27, 2017.

32. As of May 1, 2017, Plaintiff was the only employee of Defendant who was working in its cleaning division and who was utilizing approved FMLA leave.

33. As of May 1, 2017, Plaintiff was the only employee of Defendant who was working in its cleaning division and who was on leave from work at Defendant because of pregnancy.

34. During Plaintiff's use of approved FMLA leave in approximately April 2017 and May 2017, Defendant filled Plaintiff's Cleaning Manager position with an individual named Jody S. (male).

35. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant continued to employ Jody S. in Plaintiff's Cleaning Manager position.

36. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant continued to employ the same individuals (Plaintiff's co-workers) – including but not limited to Betty (last name unknown), Connie (last name unknown), Sharon Swan, Larry H., Seymone H., Avi S., Greg S., April M., and Jody S. – in its cleaning division and at Plaintiff's work site (the Milwaukee Art Museum).

37. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant "re-hired" the same individuals (Plaintiff's co-workers) – including but not limited to Betty (last name unknown), Connie (last name unknown), Sharon Swan, Larry H., Seymone H., Avi S., Greg S., April M., and Jody S – in its cleaning division and who worked at Plaintiff's work site (the Milwaukee Art Museum) prior to the sale.

38. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant did not "re-hire" or continue to employ Plaintiff in its cleaning division.

39. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, the job positions, job duties, and job location(s) of the employees of in Defendant's cleaning division were the same as prior to the sale.

40. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, the supervisory and management personnel of Defendant's cleaning division were the same as prior to the sale.

41. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, the items that the employees of Defendant's cleaning division used in order to perform their job duties were the same as prior to the sale.

42. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, the services that the employees of Defendant's cleaning division provided were the same as prior to the sale.

43. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, the customers and clients of Defendant's cleaning division were the same as prior to the sale.

44. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, the services that Defendant's cleaning division offered to its clients and customers were the same as prior to the sale.

45. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, the business operations of Defendant's cleaning division remained the same or similar as prior to the sale.

46. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant advertised for open positions in its cleaning division for which Plaintiff was at least minimally qualified.

47. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant did not offer or "re-hire" Plaintiff into any open positions in its cleaning division for which Plaintiff was at least minimally qualified.

48. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant supervised the day-to-day activities of the employees of its cleaning division.

49. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant hired, terminated, promoted, demoted, and suspended the employees of its cleaning division.

50. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant reviewed and evaluated the work performance of the employees of its cleaning division.

51. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant established and controlled the work schedules of the employees of its cleaning division.

52. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant established the work rules, policies, and procedures by which the employees of its cleaning division abided in the workplace.

53. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant controlled the terms and conditions of employment of its cleaning division employees.

54. Subsequent to Defendant's sale of its cleaning division on or about May 1, 2017, Defendant determined the rate and method of monetary compensation received by the employees of its cleaning division.

55. On or about December 15, 2017, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), designated as EEOC Charge No. 443-2018-00450, alleging that Defendant discriminated against her on the basis of her sex (female-pregnancy) and disability by failing to reasonably accommodate her and by terminating her employment.

56. On or about March 13, 2018, Plaintiff amended EEOC Charge No. 443-2018-00450, alleging that Defendant failed to re-hire her on the basis of her sex (female-pregnancy) and disability subsequent to her termination.

57. The EEOC issued Plaintiff a Notice of Right to Sue on Charge No. 443-2018-00450, dated March 19, 2018.

58. Plaintiff has exhausted all administrative remedies and filing requirements prior to bringing this action.

**FIRST CAUSE OF ACTION – FMLA INTERFERENCE**

59. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

60. Subsequent to May 1, 2017, Plaintiff was entitled to all of the rights, benefits, and protections under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et. seq.*, and 29 CFR § 825.107, that she was entitled to prior to May 1, 2017.

61. Defendant intentionally interfered with Plaintiff's rights, benefits, and protections – and terminated Plaintiff's employment for exercising those rights, benefits, and protections – under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et. seq*.

62. As a result of Defendant's intentional violation of the FMLA, Plaintiff has suffered damages in the form of loss of wages and other employment benefits and insurance.

**SECOND CAUSE OF ACTION – SEX DISCRIMINATION (FEMALE-PREGNANCY) (FAILURE TO HIRE)**

63. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

64. Defendant intentionally discriminated against Plaintiff on the basis of her sex (female-pregnancy) by failing to "re-hire" and/or to employ her subsequent to May 1, 2017, in

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and in reckless indifference to her federally protected rights.

65. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of lost wages, lost benefits, pain and suffering, emotional distress, and other employment benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, liquidated damages, compensatory damages, punitive damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

2. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute; and

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 12th day of June, 2018

        WALCHESKE & LUZI, LLC
        Counsel for Plaintiff

        **s/ *Scott S. Luzi*** _____
        James A. Walcheske, State Bar No. 1065635
        Scott S. Luzi, State Bar No. 1067405
        David M. Potteiger, State Bar No. 1067009
        Matthew J. Tobin, State Bar No. 1097545

WALCHESKE & LUZI, LLC
15850 W. Bluemound Rd., Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
dpotteiger@ walcheskeluzi.com
mtobin@walcheskeluzi.com